Frederick Backer, J.
This is a motion for an injunction pendente lite restraining the defendants, Milk Drivers and Dairy Employees Local No. 584, etc., John J. Kelly, its president, Irving Bogin, its secretary-treasurer, and all those acting in concert with them, from taking any action intended or designed *1067 to interfere with the delivery of milk by plaintiff to milk depots serviced by it, or from interfering in any manner with plaintiff, its officers, agents and employees, or preventing them from engaging in the transportation, delivery and sale of milk. The instant application arises by reason of alleged threats by defendants to stop all of plaintiff’s operations in the milk business if it made deliveries to the new milk depot at Marlboro Houses.
The dispute involved centers about the demand by the union that the new clause 65-A in the collective bargaining agreement be enforced. This clause 65-A is word for word the same' as clause 62-A contained in a prior agreement between them which also was the subject of dispute. Plaintiff now avers that on June 13, 1960, representatives of defendant Local No. 584 told plaintiff’s representatives that, if plaintiff did not immediately sign the new collective bargaining agreement for the period of October 24,1959 to October 24, 1961, containing said clause 65-A and Schedule G-, the benefits of plaintiff’s employees under the milk industry drivers and dairy employees unions pension and welfare trust fund agreement and declaration of trust would be forthwith cancelled and the employees told by their union to cease work. Plaintiff further avers that it did sign said form of collective bargaining agreement, under compulsion of the threats made, but that, while it has no quarrel with and will abide by all of the provisions thereof, it will nevertheless not comply with the conditions imposed by clause 65-A and Schedule G-.
It is therefore plaintiff’s contention that the defendant union is attempting to compel plaintiff to cease selling milk at milk depots, both by its insistence upon the inclusion of clause 65-A (formerly 62-A) and of Schedule Gr in the form of the collective bargaining agreement imposed upon plaintiff and by its threat of a strike of the whole operation of plaintiff, if plaintiff operates at Marlboro Houses.
The court is persuaded that such objective of the union is not in pursuance of any labor objective and is not a labor dispute within the contemplation of section 876-a of the Civil Practice Act (Opera on Tour v. Weber, 285 N. Y. 348; American Guild of Musical Artists v. Petrillo, 286 N. Y. 226; Goodwins, Inc., v. Hagedorn, 303 N. Y. 300; Dalzell Towing Co. v. United Marine Division, 279 App. Div. 212). Moreover, on the facts here presented, the dispute centers, as hereinbefore stated, solely on the exclusion or inclusion of clause 65-A and Schedule Gr in the agreement between the parties. As such a labor dispute is not involved and section 876-a of the Civil Practice Act has no application. There is no dispute concerning wages, hours of work, *1068 number of employees, health, safety, or any “labor abuses.” Plaintiff is employing and has stated it will continue to employ members of Local No. 584. The effect of clause 65-A in the last analysis is regulatory of plaintiff’s manner of doing business and imposes certain restrictions thereon. The dispute as to the exclusion or inclusion of said clause 65-A and Schedule G pertains to the function of plaintiff’s business between it and its customers and does not, in my opinion, involve a lawful or legitimate object of labor. That in the ultimate end labor may or may not benefit therefrom is immaterial to the issue presented as to whether or not a labor dispute is involved. The fact that disposition of the present dispute over the contract provisions may ultimately indirectly or even directly affect employees does not transform the instant dispute into a labor matter since the underlying dispute is not concerned with employment, wages, hours or working conditions (see Mayer Bros. Poultry Farms v. Meltzer, 274 App. Div. 169, 173).
As to the injunctive relief requested, the court is convinced that sufficient proof has been presented to warrant the restraint requested. By restraining defendant, the members of its union in the employ of plaintiff will be continued in their employment, pending trial of the action. The equities of the situation appear to favor plaintiff unquestionably. By closing its milk depot, or by defendants calling a general strike against it, plaintiff has shown sufficient facts which indicate the irreparable harm and damage it will suffer. To grant this injunction pendente lite, would impose no irreparable harm or damage to defendant or to its members since their employees will continue to be employed and receive their wages pending the trial of the action. Since a trial may be had in a matter of a few weeks, the motion for an injunction pendente lite is granted. The cause is set for trial at the head of the calendar of Trial Term Part II for September 6, 1960, upon plaintiff’s payment of the required fees thereof. The necessary certificate of readiness is dispensed with. The court makes the concluding observation that arbitration between the parties on the issues presented is still available to them under their agreement and may be resorted to in their discretion.
The motion being granted, a bond in the sum of $500 is required.