WALDEN, Chief Judge.
Defendants, Sheetmetal Workers’ International Association, Local No. 223 and Fletcher L. Sessoms, have brought this interlocutory appeal directed at an order denying their motion to dismiss for lack of jurisdiction.
Plaintiff, Florida Heat and Power, Inc., instituted this cause seeking a temporary injunction against defendants. ' After a hearing without notice, defendants were enjoined from picketing plaintiff. To this, the defendant union filed a “Special Motion to Dismiss and/or Quash for Lack of Jurisdiction,” the denial of which is here appealed.
The complaint alleged that plaintiff had entered into contracts with A. P. Orleans Construction Co. to furnish the air conditioning and heating on one construction project and with Garden Builders, Inc., to furnish the air conditioning and heating for another project. All sheet metal work for both projects was subcontracted to Thermal-Air Flo, Inc., all of whose sheet metal workers belong to defendant union.
It was further alleged that since September 1, 1967, plaintiff has not employed any sheet metal workers, nor has it done any sheet metal work. Prior to September 1, 1967, plaintiff sold its sheet metal equipment to its then sheet metal workers who are now operating under the name of Fort Lauderdale Sheet Metal, Inc. That company is in no way involved in the present controversy.
Nevertheless, plaintiff alleged that on September 5, 1967, the defendant union, with actual knowledge that plaintiff employed no sheet metal workers, and with actual knowledge that all of the sheet metal employees of the subcontractor were members of defendant union, picketed the two projects with placards which read essentially :
“Florida Heat and Power on this job pays sheet metal workers sub-standard wages — lowers my standard of living and working conditions.”
Plaintiff asserted also that said picketing was for the purpose of coercing and intimidating plaintiff in the performance of its contracts and of forcing the general contractors to terminate plaintiff’s contracts.
Finally, it was alleged:
“8. (a) That no labor dispute exists between plaintiff, its employees or defendant, Union. That plaintiff does not employ sheet metal workers at its Plant. That no demand or request has been made by defendants to bargain collectively for any employees of plaintiff. That defendants are not the bargaining agent for any of plaintiff’s employees. That no demand or request has been made by any of plaintiff’s employees to have defendants act as their bargaining agent.”
A temporary 'injunction was granted. Defendant union replied with a motion asserting a lack of jurisdiction over the subject matter of the suit because the union was charged with activities either protected or prohibited by the National Labor Relations Act.
At the hearing on the motion plaintiff stipulated that it was engaged in interstate commerce and that if a labor dispute were involved jurisdiction would lie with the National Labor Relations Board. Defendants presented no evidence.
The motion was denied, the court finding that “the undisputed facts of this case clearly show that there is no labor dispute.” Defendants appeal. We affirm.
The sole question raised in this interlocutory appeal is whether the circuit court had jurisdiction to enjoin defendants or whether the National Labor Relations Act has pre-empted jurisdiction over the cause. This pre-emption doctrine becomes operative when interstate commerce is in *785 volved and the activities complained of are arguably protected or prohibited by the National Labor Relations Act. It has been stipulated that plaintiff is engaged in interstate commerce.
The second criterion, for determining pre-emption is whether the activities of the union arguably come within the protection or prohibition of the National Labor Relations Act. San Diego Building Trades Council, etc. v. Garmon, 1959, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, contained the following principle :
“When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.” 79 S.Ct. 779,780.
“Arguably subject to” has remained the language of the United States Supreme Court. Liner v. Jafco, Inc., 1964, 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347; Local No. 438 Construction & General Laborers’ Union v. Curry, 1963, 371 U.S. 542, 83 S. Ct. 531, 9 L.Ed.2d 514.
Our Florida courts have also acknowledged that a state must yield the task of classifying activities which are arguably protected or prohibited by federal law to the National Labor Relations Board. Scherer & Sons, Inc. v. International Ladies’ Garment Workers’ Union, Fla.1962, 142 So.2d 290; United Steel Workers of America, etc. v. Nubar Tool and Engineering Co., Fla.App.1962, 148 So.2d 45. But it still remains for the state court to determine whether the activities complained of are arguably within the Act. If not, then jurisdiction has assuredly not been preempted. If, however, the activities are found to be even arguably within the scope of the Act, then any further determination of the Act’s applicability lies with the National Labor Relations Board.
Whether a particular activity is arguably within the Act may well turn on, as the plaintiff has herein stipulated, whether or not there is a “labor dispute” at the heart of the controversy.
As was pointed out in N. L. R. B. v. International Longshoremen’s Association, 4 Cir. 1964, 332 F.2d 992:
“Beyond doubt the National Labor Relations Act, as amended, is designed ‘to regulate the conduct of people engaged in labor disputes.’ Marine Cooks & Stewards v. Panama S. S. Co., 362 U.S. 365, 372, 80 S.Ct. 779, 784, 4 L.Ed.2d 797 (1960). The Act is replete with references to the term ‘labor dispute’ and sec-, tion 2(9) provides a definition of this phrase.
“ ‘(9) The term “labor dispute” includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee.’ 29U.S.C.A. § 152(9).
“The Act has been interpreted as conferring Board jurisdiction over a variety of labor matters, but there can be no jurisdiction where the complaint presents a controversy unrelated to the resolution of a ‘labor dispute’ as defined. * * *” (Emphasis added.)
The United States Supreme Court has made it clear that if a labor dispute is arguably present, then state jurisdiction must yield. Liner v. Jafco, Inc., supra. There state jurisdiction was held pre-empted because, “[w]hether or not the facts showed a ‘labor dispute’ within the meaning of 29 U.S.C. § 152(9) is certainly at least arguable.”
In the present case, however, there is not even arguably a labor dispute. *786 Plaintiff has no employees who are sheet-metal workers. The Union has made no demands on plaintiff, has never indicated what it seeks, and in fact has not seen fit to enlighten either the trial court or this court as to its goals. No labor objective has been alleged or even hinted at.
Unless a “labor dispute” be taken to include every controversy which involves a labor union, the present set of facts fails to qualify by a healthy margin.
Thus the trial court acted within its jurisdiction in utilizing the injunctive process to prohibit an activity not arguably protected or prohibited by the National Labor Relations Act. See International Longshoremen’s Association, Local 1416, AFL-CIO v. Eastern Steamship Lines, Inc., 211 So.2d 858, opinion filed July 2, 1968, District Court of Appeal, Third District. See also International Union, U.A.W., A.F. of L., Local 232 v. Wisconsin Emp. Rel. Bd., 1949, 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651; Scherer & Sons, Inc. v. International Ladies’ G. Wkrs. Union, Fla.1962, 142 So. 2d 290.
Affirmed.
CROSS and OWEN, JJ., concur.