230 So.2d 154 (1970)
SHEETMETAL WORKERS' INTERNATIONAL ASSOCIATION, LOCAL UNION NO. 223 and Fletcher L. Sessoms, Petitioners,
v.
FLORIDA HEAT AND POWER, INC., a Florida Corporation, Respondent.
No. 38078.
Supreme Court of Florida.
January 7, 1970.
*155 Seymour A. Gopman, of Kastenbaum, Mamber, Gopman, Epstein & Miles, Miami Beach, for petitioners.
Robert M. Sturrup, Hollywood, of Thomas, Sturrup, Della-Donna & Leopold, Fort Lauderdale, for respondent.
ADKINS, Justice.
This case arose when Florida Heat and Power, Inc., plaintiff below, began action seeking a temporary injunction against defendants, the petitioners in this Court. After a hearing without notice, defendants were enjoined from peacefully picketing plaintiff and from engaging in other union activities, including secondary pressure. To this order by the Circuit Court of Dade County, the defendants filed a motion to dismiss or quash the action and dissolve the injunction for lack of jurisdiction in the trial court. This motion was denied. The denial was appealed to the District Court of Appeal, Fourth District, which affirmed. Sheetmetal Workers' International Association, Local Union No. 223 v. Florida Heat and Power, Inc., 214 So.2d 783.
We issued writ of certiorari and assumed jurisdiction under Appellate Rule 4.5(c) (6) (3), 32 F.S.A., because the decision of the District Court of Appeal, Fourth District, is in clear and direct conflict with rules of law announced in a prior Florida appellate decision. Local 675, International Union of Operating Engineers, AFL-CIO v. Meekins, Inc., 175 So.2d 59 (2d D.C.A. 1965).
It is settled law that jurisdiction over labor activities is pre-empted in favor of the National Labor Relations Board, if the activities arguably are covered by the National Labor Relations Act. In such cases state courts may not exercise jurisdiction because the jurisdiction of the Board is paramount and exclusive. Scherer & Sons, Inc. v. International Ladies' Garment Workers Union, Local 415, 142 So.2d 290 (Fla. 1962); Garner v. Teamsters Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228; San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775.
However, it is not a settled question of law whether a Florida court, when the question of possible federal jurisdiction is raised, may initially determine whether a labor dispute arguably does exist, in which case the state court must divest itself of jurisdiction; or whether, once this issue is raised, the Florida court must yield to the N.L.R.B. to decide whether it arguably does have jurisdiction. The District Court of Appeal, Fourth District, in the case sub judice, and the District Court of Appeal, Third District, in the case of Teamsters Union v. Fontainbleau Hotel Corp., 222 So.2d 54 (1969) (petition for writ of certiorari pending in this Court), decided that a Florida court may initially make the threshhold decision as to possible exclusive and pre-empted jurisdiction in the National Labor Relations Board. The District Court of Appeal, Second District, in the Meekins case, supra, stated that on these same facts the state court must yield to the National Labor Relations Board for determination; it may be argued the rule announced in the Meekins case was dictum, but even so this Court is vested with jurisdiction to resolve conflicts of appellate decisions. State v. Moore, 153 So.2d 819 (Fla. 1963).
We believe the correct principles of law were announced by this Court in Scherer, supra. To the extent consistent with the decision announced in Scherer, we reaffirm the statement of the District Court of Appeal, Second District, in Meekins. The decision of the District Court of Appeal, Fourth District, in the case sub judice is reversed. The decision of the District Court of Appeal, Third District, in Teamsters *156 Union v. Fontainbleau, supra, is not now before us for review.
In Scherer, the language of this Court made two things clear. First, that if a case is arguably subject to the jurisdiction of the National Labor Relations Board, then the state courts must divest themselves of jurisdiction in favor of the federal Board. Second, when the question of possible or arguable federal jurisdiction arises it is for various reasons best left to be answered by the National Labor Relations Board. Justice Thornal, speaking for an unanimous Court, stated (142 So.2d at 293):
"Admittedly, many aspects of control of labor relations have been left to the states. It must be conceded, however, that where a given situation is `arguably subject' to the prohibitions or protections of the Taft-Hartley Act, the federal government has preempted state action, at least to the extent of conveying to the National Labor Relations Board the initial jurisdiction to determine the applicability of the federal law."
"* * *
"At least under the Taft-Hartley Act, the National Labor Relations Board would be the appropriate forum to determine initially the presence or absence of federal jurisdiction." (Emphasis supplied) (page 294)
The Court further stated (at 295):
"We might interpolate that in this broad area of labor relations, unless state jurisdiction is clear, time, effort and money could be conserved by initially employing the expeditious procedure which the Congress has now established to obtain a preliminary determination of jurisdiction by the National Labor Relations Board."
The concept that state courts should leave to the National Labor Relations Board the determination of jurisdiction unless state power is clear was properly echoed by the District Court of Appeal, Second District, in United Steel Workers v. Nubar Tool & Engineering Co., 148 So.2d 45, in which it was said (at page 49):
"[W]here, as here, a substantial task of fact finding is required to determine whether or not the labor activities involved are protected or prohibited under the federal act or neither, primary authority to make such a determination lies exclusively with the N.L.R.B."
The decisions in Scherer and Nubar are fully in harmony with the rules of law announced by the United States Supreme Court in San Diego Building Trades Council, supra, interpreting §§ 157 and 158, National Labor Relations Act (as amended), 29 U.S.C.A. § 141 et seq. The United States Supreme Court said:
"At the time it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 (§ 157 or § 158) or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. What is outside the scope of this Court's authority cannot remain within a State's power and state jurisdiction too must yield to the exclusive primary competence of the Board." (Emphasis supplied)
In Scherer, the Circuit Court of Dade County had enjoined labor activities. The District Court of Appeal reversed; 132 So.2d 359. On certiorari, this Court took the case and affirmed the holding of the District Court of Appeal, remanding so that the Circuit Court could be instructed to divest itself of its invalidly-assumed jurisdiction. 146 So.2d 137.
In the case sub judice, the respondent complained in his petition for injunction that various labor activities were being carried on, including picketing of his business ostensibly over substandard wages *157 paid to sheetmetal workers and other activities germane to this case. Respondent produced evidence he did not employ sheetmetal workers, having sold that portion of the business to all or some of his sheetmetal employees immediately before picketing began. Respondent also complained of secondary pressure brought by the union upon other persons with whom he did business. The injunction was issued without notice. Subsequently, on motion to dissolve the injunction, the Circuit Court held that the activities were not within the National Labor Relations Act, that respondent employed no sheetmetal workers, and the Court found jurisdiction. The Court clearly overlooked the language of § 158(b) (4) (ii) (B) of the National Labor Relations Act, which is aimed at secondary pressure and secondary boycotts by unions. The activities complained of by the respondent in his request for an injunction arguably, in fact clearly, invoke the exclusive jurisdiction of the National Labor Relations Board. The Circuit Court did not have jurisdiction to issue the order complained of.
The United States Supreme Court, in Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 480-481, 75 S.Ct. 480, 488, 99 L.Ed. 546 discussed the problem which confronted the Circuit Court in this case. Said the United States Supreme Court:
"We realize that it is not easy for a state court to decide, merely on the basis of a complaint and answer, whether the subject matter is the concern exclusively of the federal Board and withdrawn from the State * * *. But where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction * * *." (Emphasis supplied)
"A State may not enjoin under its own labor statute conduct which has been made an `unfair labor practice' under the federal statutes." Id. at 485.
Note that § 158(b) (4) (ii) (B) states:
"It shall be an unfair labor practice for a labor organization or its agents * * * (4) * * * (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object there of * * * (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person * * *."
Also note this portion of the complaint filed with the Circuit Court by Florida Heat and Power:
"7(a) That defendants have stated, in substance, to various contractors, including A.P. Orleans Construction Co., that `if you do business with Florida Heat and Power, I'll picket your job.'
"* * *
"7(c) That defendants have forced at least one contractor to terminate its contract with plaintiff by threatening to picket the contractors job."
It is difficult to avoid the conclusion that the activities complained of in this case fall within the jurisdiction of the National Labor Relations Board, when paragraph 7 of the complaint is read in context with § 158 of the National Labor Relations Act.
Yet, despite Section 158, the Circuit Court in its order enjoined secondary pressure by the union. Its injunction therefore must be dissolved.
We do not reach the question whether the Circuit Court, or another Florida court, could enjoin some union activities while not reaching those questions best left to the *158 National Labor Relations Board. Such a case has yet to arise in Florida.
Generally speaking, two classes of labor activities are within the exclusive jurisdiction of the National Labor Relations Board and thus outside the jurisdiction of the Florida courts. These are the activities which are either employers' or employees' union unfair labor practices, the so-called protected and prohibited activities of Section 158.
State courts may exercise jurisdiction over several types of labor activities. These include activities which are neither protected nor prohibited by the National Labor Relations Act. Scherer, supra; Weber v. Anheuser-Busch, supra.
Jurisdiction also is vested in the state courts, under the state police power, to enjoin activities which are actually or imminently violent or disorderly, or involve mass picketing or other affronts to public order and safety. Such activities may be enjoined, even though they may also be unfair practices, and as such are subject to the jurisdiction of the National Labor Relations Board; as such, they are an exception to the doctrine of exclusive jurisdiction in the N.L.R.B. Perez v. Trifilette et al., 74 So.2d 100 (Fla. 1954), certiorari denied, 348 U.S. 926, 75 S.Ct. 337, 99 L.Ed. 726; Garner v. Teamsters Union, supra.
The authority of Florida courts also is recognized to uphold this state's policy and enforce its provisions regarding the open shop, under the "Right to Work" provisions of the state Constitution and statutes, even though activities may be covered by federal legislation; this field represents a second exception to the doctrine of exclusive jurisdiction in the National Labor Relations Board. Declaration of Rights, Sec. 12, Fla. Const. (1885), F.S.A.; § 447.01 (1) F.S.A.; Schermerhorn v. Local 1625, Retail Clerks International Association, AFL-CIO, 141 So.2d 269 (Fla. 1962); 373 U.S. 746, 83 S.Ct. 1461, 10 L.Ed.2d 678, affirmed 375 U.S. 96, 98, 84 S.Ct. 219, 11 L.Ed.2d 179.
As other valid state labor policies are developed, it is probable that additional accords with federal labor policy will be reached, and that additional areas of concurrent, rather than federally-exclusive, jurisdiction may be established.
It is acknowledged by the United States Supreme Court that although the jurisdiction of the National Labor Relations Board is exclusive, its boundaries are obscure. Some jurisdiction over labor activities is left with the states. Doubtful questions of jurisdiction are to be resolved as specific cases arise. Garner v. Teamsters Union, supra; International Association of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018. Said the Supreme Court of the United States in Gonzales (at 619, 924):
"The statutory implications concerning what has been taken from the States and what has been left to them are of a Delphic nature, to be translated into concreteness by the process of litigating elucidation."
Since the jurisdiction of the Florida courts is residual, leftover from the exclusive (or in specific fields, concurrent) jurisdiction of the federal tribunals, and since this jurisdiction must be established case-by-case, then it is obvious that the jurisdiction of Florida courts will remain obscure until its boundaries are charted case-by-case. In the process of litigation, in the state courts as well as in federal forums, the appropriate sphere of action and proper limits of federal jurisdiction will come to be more clearly defined. In view of the need to ascertain these jurisdictional horizons through the debate and fact-assembly processes of the adversary system, the use of ex parte injunctions should be avoided, if possible. The use of ex parte injunctions does not help to resolve the uncertainty about the proper role of state courts in labor litigation, and does not serve the ends of Florida state policy. This is true even though economic pressure may be brought against a business by a union; *159 economic pressure is sanctioned by federal legislation, and is therefore protected, and it is the muscle which enables the collective bargaining process to work with minimal governmental interference.
Therefore, to avoid collision with federal labor policy and to help remove the obscurity as to proper state jurisdiction, the use of ex parte injunctions must be limited to those three areas where their use already has been properly established: Where it is absolutely clear no federally protected or prohibited activities are involved, where there is violence, and where there is an affront to the state's right-to-work policy.
In all other cases, injunctions should not be issued without a prior opportunity to be heard by both sides to the dispute, so that emergent state interests, as well as competing private interests, can be litigated and built into the record. The future emergence of state labor jurisdiction will occur most successfully only if Florida courts refrain from tweaking the federal nose by precipitously issuing injunctions, and focus upon record-building and early adversarial litigation.
We hold that the Circuit Court of Broward County erred in its determination that at least some of the activities complained of were not arguably within the exclusive jurisdiction of the National Labor Relations Board, and that the Court was without jurisdiction to initially determine whether the labor activities complained of were within the jurisdiction of the N.L.R.B. We do not hold that, on a proper complaint, some of the activities complained of may not have been found, in proper proceedings, to be within the sphere of valid state interest. We remand to the District Court of Appeal, Fourth District, with instructions to remand to the Circuit Court of Broward County to dissolve the injunction and dismiss the complaint.
It is so ordered.
DREW, Acting C.J., CARLTON and BOYD, JJ., and MANN, District Court Judge, concur.