PEARSON, Judge.
This is an interlocutory appeal from a pendente lite injunction whereby the appellants were prohibited from among other things: “Picketing or engaging in a strike, walkout or cessation of work or continuation thereof wherein an object or effect thereof is to engage in a secondary boycott. ...”
The appellants, who are styled Local Union No. 24, International Organization of Masters, Mates and Pilots (a/k/a Offshore Division, International Organization of Masters, Mates and Pilots) and International Organization of Masters and Pilots, claim to be a labor unión. The *911 appellees, Marine and Marketing International Corporation, are the operators of a steamship.
The appellants urge reversal upon three points. We hold that the order must be reversed upon appellants’ point two which is: “Peaceful picketing in this case is a matter arguably protected or prohibited by the National Labor Relations Act and is therefore within the exclusive jurisdiction of the National Labor Relations Board.” We therefore do not discuss points one and three.
Guidelines for the Courts of Florida upon the difficult question of federal preemption of jurisdiction over activity that is arguably subject to the National Labor Relations Board have been set out by the Supreme Court of Florida in Sheetmetal Workers Int. Ass’n v. Florida H. & P. Inc., Fla.1970, 230 So.2d 154. In that case, the court held that the trial court should not have issued the subject injunction and in so holding said:
“Therefore, to avoid collision with federal labor policy and to help remove the obscurity as to proper state jurisdiction, the use of ex parte injunctions must be limited to those three areas where their use already has been properly established: Where it is absolutely clear no federally-protected or prohibited activities are involved, where there is violence, and where there is an affront to the state’s right-to-work policy.
“In all other cases, injunctions should not be issued without a prior opportunity to be heard by both sides to the dispute, so that emergent state interests, as well as competing private interests, can be litigated and built into the record. The future emergence of state labor jurisdiction will occur most successfully only if Florida courts refrain from tweaking the federal nose by precipitously issuing injunctions, and focus upon record-building and early adversarial litigation.
“We hold that the Circuit Court of Broward County erred in its determination that at least some of the activities complained of were not arguably within the exclusive jurisdiction of the National Labor Relations Board, and that the Court was without jurisdiction to initially determine whether the labor activities complained of were within the jurisdiction of the N.L.R.B.”

In the case now before us the appellee urges that the quoted holding does not apply: (1) because the record is insufficient to establish that the activity enjoined is arguably subject to the National Labor Relations Act, and (2) because appellants clearly represent supervisory personnel who are excluded from the provisions of the National Labor Relations Act. The appendices do not furnish a full report of the proceedings in the trial court. They would be insufficient for a discussion on the propriety of an ordinary restraining order. They are sufficient to show that the question of the federal preemption of jurisdiction was raised and considered by the trial judge. We conclude that the question is properly before us on the record.
We turn now to appellee’s contention that the preemption question is not arguable because the dispute is between appellee and its former supervisory personnel. It is true that the National Labor Relations Act excludes supervisory personnel.[1] The ques *912 tion for the trial court to decide and which we must here review is whether there was any arguable basis for a holding that the defendant in the trial court (appellant here) was a “labor organization.” In International Organization of Masters, M. & P. v. N.L.R.B., 122 U.S.App.D.C. 74, 351 F.2d 771, (D.C.Cir. 1965) that Federal appeals court held that a local composed entirely of supervisors could not be a labor organization.
The record before us does not conclusively determine the question of the amenability of the appellant to the jurisdiction of the National Labor Relations Board. We do not think it is necessary to determine whose burden it was to submit proof of the issue, because we reach the conclusion that once the issue was arguably raised it was proper for the trial court to defer a determination thereof until the National Labor Relations Board had been presented with an opportunity to determine its jurisdiction. See Marine Engineers Ben. Asso. v. Interlake S.S. Co., 370 U.S. 173, 82 S.Ct. 1237, 8 L.Ed.2d 418 (1962).
Appellee’s reliance upon Hanna Min. Co. v. District 2 M.E.B.A., 382 U.S. 181, 86 S.Ct. 327, 15 L.Ed.2d 254 (1965) appears to be misplaced in view of the fact that Hanna dealt with a case in which initial determination of the issue was made by the National Labor Relations Board, Hanna (supra) 382 U.S. 181, 86 S.Ct. 327, 15 L.Ed.2d at 257.
Accordingly, the restraining order appealed is reversed.
Reversed.

. Thus, labor organizations must commit unfair labor practices under The National Labor Relations Act, § 8(b) (4) as amended 29 U.S.C.A. § 158(b) (4). The applicable definitions under The National Labor Relations Act, § 2 as amended 29 U.S.C.A. § 152 reads as follows:
*****
“(3) The term ‘employee’ shall include any employee, and shall not be limited to tbe employees of a particular employer, unless [the Act] explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual em *912 ployed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual employed by an employer subject to the Railway Labor Act, as amended from time to time, or by any other person who is not an employer as herein defined.
si: * # * #
“(5) The term ‘labor organization’ means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.
* * * * *
“(11) The term ‘supervisor’ means any individual having authority in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.”
s*« * * * $